# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RANDY LEE ISAACS,
Plaintiff

vs

Case No. 1:08-cv-828
(Spiegel, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 7), the Commissioner's response in opposition (Doc. 10), and plaintiff's reply

memorandum. (Doc. 11).

## PROCEDURAL BACKGROUND

Plaintiff was 48 years old at the time of the ALJ's decision. He is illiterate, able to

communicate in English, and obtained a ninth grade education in special education classes. His

past work experience was as a concrete finisher, factory worker (glue mixer), and termite control

treatment worker. Plaintiff applied for DIB in May 2005, alleging an onset of disability of April

4, 2003.[1] Plaintiff's application was denied initially and upon reconsideration. Plaintiff then requested and was granted a de novo hearing before an administrative law judge (ALJ). Plaintiff, who was represented by counsel, appeared at a hearing before ALJ Deborah Smith. A vocational expert also appeared and testified at the hearing.

On May 9, 2008, the ALJ issued a decision denying plaintiff's DIB application. The ALJ determined that plaintiff's "severe impairments, in combination are status post sigmoid colon resection, degenerative disc disease with back and neck pain, borderline intellectual functioning, a history of substance abuse (reportedly in remission), mixed hearing loss, and chronic obstructive pulmonary disease (COPD)." (Tr. 16). The ALJ also determined that plaintiff "does not suffer from a severe back condition." (Tr. 16). The ALJ further determined that plaintiff does not have an impairment or combination of impairments that meet or equal the Listing of Impairments. (Tr. 19). According to the ALJ, plaintiff retains the residual functional capacity (RFC) for a range of medium work, with lifting up to 50 pounds occasionally and 25 pounds frequently, but he should avoid frequent exposure to dust, gases, fumes, and other pulmonary irritants, and should work in an environment without excessive noise or a great deal of background noise. (Tr. 24). In terms of mental functioning, plaintiff would need a job that is simple, routine, and repetitive in nature and that does not involve significant decision-making or frequent changes secondary to his borderline intellectual functioning. (Tr. 24). The ALJ determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms are not credible to the extent they are inconsistent with the RFC set forth above. (Tr. 23). The ALJ determined that plaintiff could not perform his past relevant work, but

[1]Plaintiff, through counsel, later amended the onset date of disability to August 5, 2004. (Tr. 14).

based on the vocational expert's testimony, could perform other jobs that exist in significant numbers in the national economy. (Tr. 25-26). Consequently, the ALJ concluded that plaintiff is not disabled under the Act and therefore not entitled to disability benefits. The Appeals Council denied plaintiff's request for review making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any

3

other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the

4

Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. 1990) (unpublished), 1990 WL 94. Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17

5

F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 7 at 2-4; Doc. 10 at 2-6) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns a single error in this case: that the ALJ erred by not finding plaintiff's low back condition to be a severe impairment. For the reasons that follow, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed and remanded for further proceedings.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to

perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimus* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers v. Commissioner*, 486 F.3d 234, 243 n.2 (6th Cir. 2007).

Plaintiff contends the ALJ's finding of a non-severe back impairment is without substantial support in the record given the MRI findings of March 2006 and the neurological surgeon's recommendation for spinal fusion surgery at L5-S1. The March 2006 MRI findings at L5-S1 revealed advanced disc desiccation and severe loss of disk space height with moderate degree of diffuse disk bulge with superimposed left central disk space spur and a right central and right proximal foraminal disk herniation, small, with associated radial annular tear with bilateral facet hypertrophy mild in degree and mild bilateral L5 foraminal stenosis, right greater than left, and lateral recess stenosis, left greater than right. (Tr. 317-318). The MRI also showed that the left S1 root nerve appears to be mildly displaced by the disk space spur. (Tr. 318).

Plaintiff was referred by his primary doctor to the Cincinnati Spine Institute and on July

11, 2006, was examined by neurosurgeon, Dr. Michael J. Kramer. Based upon his clinical

findings and review of the MRI, Dr. Kramer recommended surgery consisting of an anterior

lumbar interbody fusion at L5-S1, although he did express some concerns about performing the

surgery given the claimant's history of colon resection.[2] (Tr. 364-366). Plaintiff argues that since

his back condition is serious enough to warrant the recommendation of neurosurgery, the ALJ's

finding that the condition is not severe, *i.e.*, imposes no more than a slight abnormality, is not

supported by substantial evidence.

The basis for the ALJ's severity determination is not clear from the record. The ALJ

makes an explicit finding that plaintiff "does not suffer from a severe back condition" (Tr. 16),

but states that plaintiff's "degenerative disc disease of the lumbar spine" and other conditions

"are severe impairments in combination." (Tr. 16-17). While the ALJ discusses the pertinent

medical evidence concerning plaintiff's back condition (Tr. 18-19), the ALJ does not explain

why she believes plaintiff's back impairment is no more than a "slight abnormality" which has

such minimal effect on plaintiff that it would not be expected to interfere with his ability to work.

*Farris*, 773 F.2d at 90. Given the 2006 MRI findings showing an objective basis for plaintiff's

pain and Dr. Kramer's recommendation for spinal fusion surgery, "the medical evidence both

supports a finding of a severe impairment and provides a sufficient underlying medical basis for

claimant's subjective complaints of pain." *Fraley v. Secretary of Health and Human Services*,

733 F.2d 437, 440 (6th Cir. 1984) (finding severe impairment where reports confirmed herniated

disk for which surgery was recommended). In the absence of any explanation by the ALJ as to

why plaintiff's lumbar impairment was not a severe impairment, the Court determines the ALJ's

---

[2]In December 2000, plaintiff underwent a sigmoid colon resection due to diverticulitis. (Tr. 144).

severity finding is not supported by substantial evidence.

The Commissioner contends that the ALJ's failure to identify plaintiff's back condition as "severe" is not reversible error since the ALJ determined that plaintiff had a combination of impairments that were severe, continued to the next step of the sequential evaluation process, and considered the functional limitations resulting from all of plaintiff's impairments, including those found not to be severe, citing *Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). (Doc. 10 at 9).

In *Maziarz*, the ALJ determined that the claimant suffered from several severe cardiac impairments. The plaintiff argued the ALJ erred by not finding his cervical condition to be a severe impairment at step two of the sequential evaluation process. The *Maziarz* Court found it "unnecessary to decide" whether the ALJ erred in failing to find that the claimant's cervical condition constituted a severe impairment at step two because the ALJ continued with the remaining steps of the sequential evaluation process and considered the plaintiff's cervical condition in determining whether he retained a sufficient residual functional capacity to allow him to perform substantial gainful activity. Therefore, the Court concluded that any alleged error at step two was harmless. As long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error." *Maziarz,* 837 F.2d at 244. In other words, if an ALJ errs by not including a particular impairment as an additional severe impairment in step two of his analysis, the error is harmless as long as the ALJ found at least one severe impairment, continued the sequential analysis, and ultimately addressed all of the claimant's impairments in determining his residual functional capacity. *See Swartz v. Barnhart,*

9

188 Fed. Appx. 361, 368 (6th Cir. 2006) (citing *Maziarz*). Thus, the "critical issue" for the reviewing Court under these circumstances is whether the ALJ's RFC finding is supported by substantial evidence. *Id.*

In the instant case, the ALJ determined that from a physical standpoint, plaintiff has the RFC for medium work. *See* 20 C.F.R. § 404.1567(c) (medium work involves lifting no more than 50 pounds at a time with frequent carrying or lifting of objects weighing up to 25 pounds). However, the basis for the ALJ's physical RFC decision is not readily apparent from the record. The ALJ appears to rely on several physician opinions for her RFC finding, stating that she "has afforded greater weight to the State agency medical consultant opinion (Exhibit 12F), as well as the consultative examination reports from Dr. Schapera (Exhibit 7F) and Dr. Sparks (Exhibit 6F), than to the medical source opinion of Dr. Kramer (Exhibit 19F)." (Tr. 23). Yet, a review of those opinions do not support the ALJ's RFC finding for medium work.

The RFC opinions of the State agency medical consultant (Exhibit 12F) and Dr. Sparks (Exhibit 6F) relate to plaintiff's mental functioning only (See Tr. 215-222, 280-296) and do not provide support for the ALJ's physical RFC.

Nor do the opinions of Drs. Schapera or Kramer support a finding that plaintiff can perform medium work. Dr. Schapera, who performed a one time consultative examination on July 28, 2005, opined only that plaintiff "appears capable of performing activities commensurate with his age and intellect." (Tr. 226). This says nothing about plaintiff's ability to stand, walk, sit, lift, or perform any other physical activities for an eight-hour workday. Dr. Kramer, the neurosurgeon who recommended that plaintiff undergo an anterior lumbar interbody fusion at L5-S1 in July 2006, did not give an opinion on plaintiff's functional capacity. No doctor opined

that the plaintiff can perform "medium" work as the ALJ determined.

It appears that the ALJ's finding that plaintiff has the RFC for "medium" work is based solely upon the ALJ's own lay medical opinion. The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because "[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms." *Deskin v. Commissioner*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008) (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)). *See also Manso-Pizarro v. Sec. of Health & Human Services*, 76 F.3d 15, 17 (1st Cir. 1996) ("an ALJ, as a lay person, is not qualified to interpret raw data in a medical record"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence."). As the *Deskin* Court recognized:

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make the connection himself.'

*Deskin*, 605 F. Supp.2d at 912 (quoting *Rohrgerg v. Apfel*, 26 F. Supp.2d 303, 311 (D. Mass. 1998) (internal citation omitted)).

In the instant case, the ALJ rendered her RFC finding for medium work without reference

to any medically determined RFC opinion bridging the raw medical data to specific functional limitations. Because there is no medical source opinion supporting the ALJ's finding that the plaintiff can perform "medium" work, the Court concludes the ALJ's RFC determination is without substantial support in the record.

The only other opinion cited by the ALJ in conjunction with her RFC finding was that of Dr. Horn, the emergency room doctor who examined plaintiff on May 4, 2006 for low back pain. (Tr. 23). The ALJ intimates that the March 2006 MRI findings suggesting nerve root impingement are negated by Dr. Horn's report. The ALJ states that Dr. Horn "found the claimant's complaints were mostly attributable to constipation, and his back pain was likely musculoskeletal in nature. There was no evidence to suggest cord compression or cauda equine syndrome." (Tr. 23).

As with the other doctors, Dr. Horn did not express any opinion on plaintiff's functional capacity. In addition, the reference to "constipation" in Dr. Horn's notes as the source of plaintiff's pain is most likely a typographical error. Dr. Horn's notation states, "This 46-year-old presents to the emergency department complaining of some lower back pain. I find his injury to be most constipation with likely musculoskeletal mechanical cause." (Tr. 330). Not only does the term "constipation" make no sense in the context of the statement, but a review of Dr. Horn's report fails to indicate any mention of "constipation" as an issue during his examination. In fact, the review of systems notes "negative bowel or bladder incontinence or bowel or bladder retention" and that plaintiff "denies any abdominal pain." (Tr. 329). In addition, Dr. Horn referred plaintiff to a neurosurgeon for further evaluation, suggesting a severe back condition, and not constipation. Nor is there any evidence that Dr. Horn had access to the MRI results in

assessing plaintiff's back pain. Dr. Horn's report does not support a finding of that plaintiff's back impairment is not severe or that plaintiff is capable of medium work activity.

In sum, the Court finds the ALJ erred in assessing plaintiff's back impairment at step two of the sequential evaluation process and in assessing plaintiff's RFC. Since all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits, this matter should be remanded for further proceedings. *Faucher,* 17 F.3d at 176.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner by **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 9/22/09

Timothy S. Hogan
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RANDY LEE ISAACS,
    Plaintiff

      vs                                           Case No. 1:08-cv-828
                                                    (Spiegel, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).